April 10th.-—
Judge Coalter :
It w’ould be unnecessary in this case to decide, whether the deposition of Ball was properly rejected, if the court was unanimously of opinion that this will, on the merits, could not be supported as a good will of lands. This however not being the case, it becomes necessary-for me, at least to express my doubts as to the correctness of that decision.
I think it clear, that if a man’s name is used as next friend to infants, without his knowledge or consent at any time given, he is not answerable for costs, and if not so answerable, and in no other way interested, that he is a good witness. The improper conduct of adult plaintiffs or their counsel, in prosecuting a suit in this way, jointly *139 with infants, cannot prejudice the latter, nor subject the next friend, without his assent, to the payment of costs,
There is no proof in the cause, that the witness even 1 - knew that his name had been used as next friend $ on the contrary, it is in proof, that when it was first so used he was ignorant of it. It does not appear that he ever paid fees to counsel, attended to take depositions, or took any part in the business. It is said, he was probably so named in the commissions; but this does not appear : on the contrary, the caption of his deposition recites a commission in a suit between “ Burwell and others and Corbin and others and in another deposition taken before the same justices, the caption recites the names of the parties, without naming Ball as next friend. Had he been so named in the commission by which his deposition was taken, it is strange that neither the justices nor the parties should have adverted to the extraordinary fact of one of the plaintiffs giving evidence in the cause.
But this deposition was not excepted to, by endorsement on it, as is usual in chancery suits. On the contrary, the cause was twice heard on this deposition with others, without objection; once, probably when Ball was alive, and once during the same term, at which his death is stated in the record ; at which time too the issue was directed, and the depositions of the witnesses who were dead, ordered to be read on the trial.
There is, therefore, not only the absence of the necessary proof to shew an interest in the witness; but all these facts and circumstances tend to prove the contrary.
But then it is said, that if Ball was not answerable for costs, there was no next friend of the infants, and so they were not properly parties to the suit; and as in that case depositions against them could not be read, so neither could those in their favor; and that on this ground, Ball’s deposition would be properly rejected. This at first appeared to me a formidable objection; hut on reflection I am not entirely satisfied with it. Suppose one of the de *140 fondants’ important witnesses had been dead, and his de= position objected to on this ground, that Ball had never assented to become next friend, might it not well have ° been said m answer to this, that the suit was regularly a next friend to the infants being named? ' He could have assented, had the deposition been in his favour, and in that case it would have been read; but as it is against him, he chooses now to dissent, and thus the process of the court will be used to entrap and defraud the parties. I should think it would be very hard to exclude the deposition on the part of the defendant under such circumstances. But, if it would have been proper to exclude Ball’s deposition for this reason, and if that reason will go equally to exclude all the depositions on both sides, (for they were all taken before Burwell was appointed next friend,) ought not the chancellor to have set aside the verdict, to have awarded new commissions, or to have directed a new trial, excluding all the depositions ?
These are important considerations, which 1 should deem worthy of further investigation, and proper to be decided one way or the other, were it not, that excluding Ball’s testimony, and considering every thing else as regular, I am satisfied, on the merits, that the writing in question cannot be supported as a good will of lands.
This paper-writing, signature and all, is in the handwriting of the appellee Corbin, who is the principal devisee ; and the question is, whether its execution is properly attested and proved by two subscribing witnesses ?
The statute requires that a will of lands shall be in writing, and where not wholly written by the. testator himself, shall be signed by him, or by some other person in his presence and by his direction, and be attested by two or more credible witnesses in his presence.
In the case before us, the alledged will is one which is not signed by the testator, as before stated, but it is proved by a witness, (independent of what is said by one of the subscribing winesses, as hereafter noticed,) that Corbin *141 acknowledged that he himself had subscribed the testator’s name to it. The subscribing witnesses also attested it at different times.
_ , , . , , _ ,, ,. I understand it to be clearly established by ail the authorities, that every important requisite of the statute must be attested and proved by each witness. Otherwise, there would be but one witness to prove what the law says must be attested by two. They must attest a writing, not a blank sheet; they must attest a writing signed, and not one unsigned. When this writing was handed to the first subscribing witness, and he was asked to attest it, it was not signed. Suppose be had attested it in that form, and it had remained unsigned until the next day, when the second witness attested it, and the testator had then discovered the omission, and signed it; would this he an attestation of a signed will by two witnesses ? Or suppose that one witness attests in the presence of the testator, and the same witness takes the same paper into an adjoining room, where another witness only hears the testator acknowledge, and attests the same paper, but not in his presence ; although the first witness is one of the highest credit, and a jury on his evidence should find that it was the same paper which the testator had but the moment before signed and published as his will, could it be established as such under the statute ?
As I understand the law and all the adjudications upon it, we are not at liberty to believe any thing, which the statute requires to make the will a complete one, on the testimony of one witness. Suppose the statute bad required but one witness, and he knows only a part of these facts, which he is to attest; as, for instance, he knows it was a writing he attested, but he does not know it was a signed writing, and it turns out that the signature, which afterwards appears to it, was not even in the hand-writing of the alledged testator. Could this be established as a will executed, according to the statute ? And would noi such a decision open a wide door to frauds l
*142 The witnesses, in this case, attested at different times. The first proves, that when he was called on to attest, the paper was not signed at all. When the testator was reminded of this, he directed Corbin to sign it for him, which ,he did in his presence. This witness, then, proves the signature by another. But that" is not enough. He must prove and did prove, that it was so signed by the direction of the testator, and in his presence; and although it was not stated by the testator to be his will that he had thus caused to be signed; yet, if the other witness had been present at that time, and had attested and proved the same facts, I am not prepared to say that it would not be a publication of a will, notwithstanding it was not declared to be such at the time; although I think, especially where it is written and signed by another, that there are many reasons which would require a publication of it, in some way indicating that it was a will, in order to guard against frauds. The other witness, however, is totally silent as to the signature. In his deposition, he does not say it was a signed paper. But the verdict, after mentioning this writing as proved by the first witness, goes on to find that this same paper was presented to, and attested by, the second witness. But what is the fair interpretation of this finding ? ' The first witness identified the paper that he speaks of, and which, on the day before, had been signed by Corbin and attested by him: and the second witness subscribed the same paper. The jury then could well find, as they did, without proof by the second witness, that he saw a signature to the paper; and as the deposition of this witness is silent as to signature, and the jury are also silent as to this important point, except so far as they refer to it as the same paper (a term, which they give to it before it was signed at all,) I cannot infer that this witness saw a signature of any kind, when he attested. So, that if the will had been signed by the testator himself, there being no acknowledgment or recognition of the signature before this witness, I think the proof that it *143 was a signed will, would he incomplete. The verdict is evidently intended simply to state the facts as proved by these two witnesses, and to submit to the court, whether . * * , . . i i such proof is a compliance with the statute. 1 hey had no right to find the fact conclusively, on the testimony one witness, that it was a signed paper. We must, therefore, consider it, as if they had said “ so far as one witness «can establish the fact, we find it was a signed paper, “ and that the said paper, so proved to be a signed paper, “ was published to, and attested by, the second witness.”
It was a long time, and after much hesitation, before the courts were satisfied, that all the witnesses must not be present at tlie same time, and see the very fact of signing. Indeed, they ultimately came to this decision, as it were by piece-meal. First, the testator rescaled; which was considered (erroneously as is now admitted) to he an act equal to signing; then came a case in which he drew his pen over his name before a subsequent witness. By these solemn acts, it was considered that he had signed in fact before each witness, at different timos; and although the statute required that they should attest a signed paper in presence of the testator; yet, as it did not require them to do so in the presence of each other, and having attested what was considered the same fact, though at different times, it was thought they could as well prove it as if they had attested together. Having thus established the propriety of a separate attestation, the nest question was, whether an acknowledgment of the hand-writings without resealing or drawing the pen again over the name, would do ? It was then discovered, that separate attestations had been too long established to have that question disturbed. Admitting this to be law, then it was found that an acknowledgment of the hand-writing was as good, nay better, than resealing, which at most could only bo considered as a recognition of the name opposite to the seal | sealing itself being no signing within the statute 2 and that it was even better than drawing the pen over the *144 iiair'e aSain> which some judges seemed to think might be a re-execution, and destroy the previous attestation.
An acknowledgment, then, that the signature was the hand-writing of the testator, was considered tantamount *° proof of seeing him write his name. It was capable of disproof too, if a will not signed by him, was offered to probat; and although it was admitted, that even with this guard, these decisions opened a door to frauds; yet the cases had gone too far to admit of the court’s retracing their steps, which they would willingly have done j but they protest against going farther. No case is to be found, in which the acknowledgment of a signature, not in the hand-writing of the testator, was held enough.
In Ellis vs. Smith,(a) lord Ilardwicke said, “ It has 44-been hinted as if this determination would lead the way “ to a farther deviation from the statute, and by conse44 quence allow testators’ declarations, that another signed 44 for him, to be good; but authority given by a testator 44 is a collateral thing, and a thing that ought to .be proved. 44 Consequence is not to be built upon consequence, in 44 cases of this nature. I think where things are ex-44 pressly required by statute, courts are not to say other “ things shall be equivalent to them.”
I am clearly of opinion, therefore, that there is no case under the statute of frauds in England, in which an acknowledgment has been received as equivalent to proof of actual signing, except where the testator has, in some way, recognized the signature as his own hand-writing in the presence of all the witnesses, and who were therefore all capable of attesting the paper as a signed paper. Such recognition has only been held as something equivalent to personal presence, at the act of signing ; but it could not be so, unless the signature was at least seen, and in some way acknowledged. No case, I think, has gone beyond this, and all the judges agree that even this was going too far.
*145 There is no case where the signature was by another, not in the hand-writing of the testator, and where even a full acknowledgment that it was by another (naming him) by the direction and in the presence of the testator, has been held equivalent to proof of all these facts. Lord Hardwicke says, this would not be admitted. A fortiori, all these things would not be inferred by a simple declaration, that this is my will,” even if the witness saw that it was a signed paper. The most that such a declaration would be held to prove, according to the cases, is, that this would be a recognition of the testator’s own signature. I incline to think the cases do not go this far $ but that an express recognition of the signature as his accompanied with proof of that fact, if required, is as far as they establish, and as far as we ought to go. But say it would be a recognition of his signature, if it was actually signed by him $ how can an acknowledgment, in the same form of words, prove one thing, to wit: this is my hand, if that had been the fact, or another, to wit:' this is my name, signed by such a person in my presence and by my authority, when the witness heard no such thing? If all this is to bo inferred from the simple acknowledgment of the will, (which is all that is found in this case as it regards the second witness,) who is to infer it ? Not the witness ; he can only state the fact. The jury I think could not do so, and if they could, they have not done so. If the court can, it must be, not as an inference of fact, but of law: that according to the true construction of the law, the second witness has proved that the testator, by this acknowledgment, has established the fact, not to the attesting witness but to the court, that this will was signed with his name, by Corbin, in his presence and by his direction. We cannot derive our knowledge of this from the first witness. He is not competent, of himself, to prove any important fact, any more than one witness can disprove an answer in chancery. We must have two, and must make out, by construction *146 ^aw> ^10se matters of which the second witness was ignorant. We may simplify the enquiry as to our power t0 ^ suPPos*nS that Corbin had signed the will ’before either witness attested, and that they attested, either separately or together, just such an acknowledgment as the second witness proves; could we say that this will was signed by Corbin, in the presence and by the direction of the testator ?
If lord Hardwicke is light, as I think he is, in saying that even an express acknowledgment of those facts will not do, surely one, which would import at most that it was his own hand-writing, will not. .
One reason why a seal was not considered equal to signing was, that a seal could at this day be easily counterfeited. It only remained to counterfeit the hand-writing of a witness or witnesses who were dead, by proving whose hand writing the will would be established. So in the case of signature by another, all that will be necessary will be to sign it in a hand not like that of any person known, and forge the hand-writing of witnesses who are dead; or get witnesses to swear that he acknowledged the will, without stating who wrote the signature, so as to avoid detection from the guard that circumstance would afford, and the will is established, as one signed by authority.
When a man acknowledges a will signed by himself, he knows the fact that he did sign it, and if it turns out that a will is offered to probat, not signed by himself, the fraud is detected. But he may think he is acknowledging such a will as this, when in fact, being in extremity, another, not signed by him, has been imposed upon him.
I am therefore humbly of opinion, that if we establish this will, we must do it on the testimony of one witness only, and as the law does not permit this, that the decree of the chancellor must be reversed.
*147 Judge Caueii concurred in opinion with Judge Coalter, that the decree of the chancellor should be reversed.*
Judge Brooke :
The. only question submitted to the court by the agreement of the parties and the special verdict found in pursuance of that agreement, is, whether the paper-writing, purporting to be the last will of James B. Burwell is proved by the attesting witnesses Scrimgcr and Barrick, according to the act referred to in the verdict. The material words in that act arc, ‘‘ so as such last will and “ testament be signed by the testator or by some other « person in his or her presence and by his or her direc- « tion ; and moreover, if not wholly written by himself or “ herself be attested by two or more witnesses in his or her “ presence.” It is admitted that Scrimger’s testimony is entirely in compliance with the statute. He proves all that is required by it 5 but in examining the testimony of Barrick the second witness, no aid is to be derived from Scrimger’s testimony, because the statute requires two witnesses to the same facts. Nor is the testimony of Barrick to be eked out by any thing in the verdict, unless he also proves the facts required by the statute. So far the paper-writing is still proved by one witness only, and the statute is not complied with. What is proved by Barrick? He says (as found by the jury) that he was sent for and went to the house of James B. Burwell: that he found him sitting pn the bed with the said paper-writing in his band (lie calls it the said paper-writing before it was attested by him, as Scrimgor does before it was signed by him or by Corbin, for Burwell,) when the said Burwell asked him to sign that paper, and thereupon he signed his name to the said paper as a witness, in the presence of the said Burwell: that he then asked the said *148 Bnrw°M what it was he had signed ? And the said Burwell replied, “ it is my last will, but you need not make a talk of “ ’ li;'s enough.” He (Barrick) says nothing to ’the fact, that the paper-writing was signed hy Burwell or by Corbin for him, at the time he attested it. From all that appears by his testimony, it was not signed by either of them, at the time he. attested it. In calling it the said paper-writing before the jury, he points to a time, before it was signed by himself, and proves nothing more than that it was the same paper that he had signed. If he meant any thing more, he would not have called it« the said paper-writing” when it was not signed by himself, and when it was so signed, as it was when it was before the jury. Sfcrimger spoke of it in the same sense. The l’equirements of the statute have been before stated: it ought to have been signed by Burwell himself or by some one for him, or it was not a perfect will to be attested, according to the provisions of the act. It would not be contended, that if it was attested before it was signed, it would be a good attestation : because it would let in the frauds intended to be prevented. For example: if in this case Scrimger had attested it when handed to him by Burwell, and before Corbin had apprized Burwell that it was not signed, and signed it for him, it would not have been attested even by Scrimger according to the statute. But Burwell acknowledged to Barrick, that the paper-writing was his last will; so in effect he did to Scrimger, though not in terms, when he asked him to witness it before he was reminded by Corbin that it was not signed. He thought no doubt, at that time, that it was his will, though not then signed by any body. This example, extracted from this case, shews the danger of dispensing with proof, that it was signed, when attested according the statute. The case before the court has been no where decided, that I know of. The question whether the factum of signing must not be proved by all the witnesses, has been very much discussed in all the cases from *149 Lemain and Stanley,(b) down to the cases of Grayson and Atkinson,(c) and Ellis and Smith, (d) That point has been put at rest very reluctantly by the English Judges. Some of them seem to think that great frauds will be let in, by dispensing with this supposed requirement of the statute of Charles, which is like our own as regards the present enquiry. But in no case have they dispensed with proof, that the will was signed by the testator or by some one for him, according to th0e statute. In the case of Grayson vs. Atkinson, the acknowledgment by the testator was, that it was his signature which lord Hardwicke calls proving the factum of signing in some sense; and his illustration of his meaning by the practice of acknowledging the execution of a bond, by the party acknowledging to the witness that the signature was his hand, shews, that proof of the signature of the testator was not to be dispensed with. If Burwell in this case had acknowledged the signature to be his, it would have been proof, within the cases of Grayson and Atkinson, and Ellis and Smith ; the question being in these cases, whether the signing was proved according to the statute. In the case cited from Vezey and Beams, there was proof also of the acknowledgment of the signature. If the case now before the court had presented the same question, I should incline to the opinion, that the bare acknowledgment of Burwell, that the paper-writing w7as his last will, in the absence of all proof that it was signed at the time by him, would be insufficient under the statute. But the question here is still a broader one. Does Barrick prove that Corbin signed the paper-writing for Burwell, at his request and in his presence, according to the statute ? In another form, does the acknowledgment of Burwell to Barrick that the paper-writing was his last will, prove those facts? I think not. In the case of Ellis vs. Smith, lord Hardwicke, after deciding that the acknowledgment *150 **ie siSnature by the testator was proof of his having signed it, goes on to remark “ that it had been hinted as “ if this determination would lead the way to farther de- . “ viations from the statute, and by consequence would ‘e allow a testator’s declarations that another signed for “ him to be good. But authority given to another is a “ collateral thing, and a thing that ought to be proved. “ Consequence is not to be built on consequence, in cases ts of this nature.” This, it is true, was not the question before the court; but it naturally grew out of the one that was, and had, no doubt, been much reflected on; and although it may be called an obiter opinion, it is entitled to great weight.' In the case before the court, Burwell made no such acknowledgment, as in the supposed case. He did not say to Barrick that Corbin had signed it for him, at his request and in his presence. It is still a weaker case. He only acknowledged the paper writing to be his will 5 which, whatever might (upon consideration) be my opinion, on the case put by lord Hardwicke, I think not adequate proof under the statute, ’ hat it was signed Corbin, for Burwell, by his direction, and in his presence. The statute requires two witnesses to the same facts, as a security against the perjury of one. Supposing Scrimger to be perjured, Barrick’s testimony is insufficient ; and so much of the decree as establishes the will in question, to be a good devise of the real estate, am of opinion, ought to be reversed, and the rest affirmed.
Judge Roane:
It is my fortune to differ in opinion on this case, after great deliberation, from all the other judges. It is therefore my right, and perhaps my duty, to assign, somewhat at large, the grounds and reasons of that opinion.
Upon the trial of the issue in this cause, the appellants produced the deposition of William Ball who was admit *151 ted to be dead, and whose deposition had been taken without objection in the court of chancery. That deposition was objected to by the appellees, on the ground that he was named in the bill as next friend to the infant complairiants, and therefore liable for costs and interested. and the said objection was sustained by tiie court, and the deposition rejected. The circumstance that this deposition may have been before read in the court of chancery, is of no account. That court arid every court acting under its authority has always, even up to the time of its final decree, a power to reject depositions, which, from intrinsic evidence existing of record, appeal- to be illegal.
It is admitted that there was no specif c order of the court, admitting Ball as the next friend; but the question is, whether under the practice of this country, under all the circumstances of this case and all the admissions of the parties, that fact ought not to have been taken for granted. Those circumstances narrowed the enquiry before the court. The real quest ion therefore was, not so much whether Ball was the legalized next friend of the plaintiffs, as whether the appellants were at liberty, under the circumstauces and admissions aforesaid, to make the. objection.
On this subject of prochein ami, the doctrine is that the nearest relation is generally the next friend of an infant; but as that relation may, himself, have injured the infant, and be liable to a suit therefor, or may be otherwise an improper person, the court will permit any person to institute a suit on his behalf, and he is to be named as next friend in the bill.(e) That person ought however to be a person of substance, because he is liable to pay the costs of suit.(f) While it is conceded that this next friend ought to be admitted as sach.(g) it is believed that under the practice in this country, his being named in the bill, and the suit going on without objection, is a permission on *152 the part of the court, and amounts, in effect, to such admission j and much more, where he has been recognized, as in this case, by the subsequent acts of the court, and the subsequent acknowledgments of the parties.'
This next friend is not only liable for the costs, but is to be removed if he is treacherous to, or negligent of, the interests of the infant ;(h) and it is supposed, that all these checks will generally prevent improper persons, from obtruding themselves j and this consideration will perhaps justify a less strict principle, in this particular, on the part of the court. All that is required even in relation to the party interested in the costs, is, that the next friend should have been recognized and sanctioned by the court. In relation to his co-plaintiffs, they shall be concluded by their own acts and admissions, from objecting that he is not the legalized next friend of the infants.
In the case before us, it is true that Ball is not named as next friend in the bill. A blank is left for the name in that bill; but this omission is abundantly supplied. In the heading or caption of the record or proceedings, he is named as such. He is so named at the rules in October, 1812, when a conditional order was made taking the bill for confessed; and this order, so headed, was set aside in court on the 12th October, 1818. To all these proceedings the appellants were parties and privy; and in the last case an order was made in court, setting aside a rule in which Ball is stated to be the next friend of the infants. Was not this a concession by the court, and an admission by the co-plaintiffs, that he really stood in that character ? Again; to say nothing of the admissions probably contained in the commission under which this deposition was taken, how does the matter stand, upon the order of the 21st of September, 1816 ? On that day Bacon Burwell,' one of the appellants now making the objection that Ball was hot in reality the next -friend of the infants, moved *153 the court of chancery by his counsel, to be himself per- * , » mitted to prosecute as next iriend in lieu oí W. Ball deceased. This motion was granted by the court, and thereafter he acted as such. After this, can Bacon Bur-well or the court, be permitted to demj that Bali had been the next friend in his lifetime and was so when this deposition was taken ? So also the proceedings and verdict in Caroline court, all state, and therefore admit, that Ball had been the next friend; as does also the bill of exceptions, taken on the part of the appellants. Nay, that bill even admits further (contrary, however, as it appears, to the fact,) that Ball was named as next friend in the bill filed in this cause. The appellees objected to Ball’s deposition because be was so named therein, and the appellants, not denying it, but admitting the fact, only proved by one of the counsel, that Ball was not consulted on the subject. The fact of his having been named in the bill as next friend is, however, distinctly admitted by both the parties to the bill of exceptions.
However it might be, therefore, in relation to Bali’s representatives, were they now before the court and charged with the costs, can it he doubted that quoad the appellants, their own repeated admissions, and the repeated recognitions of Ball as the next friend by the court, will estop them from making the objection ? Notwithstanding this, however, they were still not without remedy as to getting his (Ball’s) deposition, during his lifetime. They might, if his evidence was important, have had his name struck out of the record, another next friend substituted, and then have taken his deposition, (i) They, however, did not pursue this course, and must abide by the consequences of their omission to take it. As for the objection on the part of the appellees, it was not necessary for them to slate and prove a fact, which was already admitted of record.
*154 Ball’s deposition was, therefore, I think, rightly re* by the court. But even if it were otherwise, it does not follow that for that error, the decree should be ’reversed. It is not at present distinctly seen, that the Vision of the jury should have been different, if that deposition had been admitted. On that point, however, I have formed no conclusive opinion.
I copie next to consider this case upon the merits. This cause having been heard in the court of chancery, upon the exhibits and depositions of the witnesses, and those depositions being found to be conflicting and contradictory, an order was made by,the said court, referring the question of; the validity of the will, to a jury ; with the usual provision, that on the trial of the issue, copies of the bills, answers, exhibits and depositions of such of the witnesses as are dead or cannot attend, should be read in evidence. On the trial of the issue in the superior court upon that evidence, and the jury at the end of the third day not having agreed upon a verdict, on the fourth day, for the purpose as is supposed, of facilitating that decision, it was agreed by the parties, that the question of law arising upon the evidence of the subscribing witnesses, in the event that .that evidence should be credited by the jury, should be reserved by a special finding of the facts that the jury may determine to be proved by that evidence, to be determined by the proper court. This agreement excluded frbm the consideration of the jury all the other testimony in the cause, except Chat of the two subscribing witnesses and that which respected their credibility 3 and considering that credibility was not only expressly referred to the jury as aforesaid, but was also peculiarly proper for their consideration, I shall shut my eyes upon all the other testimony existing in the cause, except the facts which are specially found by the verdict. 1 must also again remark, that as the special finding is agreed and required to be made upon the evidence of the subscribing witnesses (that is, of both of those witnesses,) that *155 finding is to be taken as made upon the evidence of both the said witnesses. The jury will be considered as having conformed to the agreement of the parties, which con- ** v * signed this duty to them, and not as having violated it. The only exception from this construction will be, in relation to facts which irresistibly appear from the verdict, or are thereby expressly admitted, to have been found on the testimony of one of the witnesses only. We must so consider this verdict, however, in point of fact, the case inay be; we cannot know that fact to be otherwise, unless it is regularly manifested to our view. Subject to these exceptions and limitations, every fact found in this verdict is to be considered as based upon the testimony of both the subscribing witnesses, and it does not lie in the mouth of either of the parties, to aver the contrary.
While under the influence of this rule of construction, as applied to so much of the verdict as relates to Scrimger’s attestation, it must be admitted that Barrick was then absent ; a different result will take place in relation to what passed at the time of Harriett's attestation. It may well be, for any thing seen in this verdict, that Scriinger was then also present; and if we were even to refer to the depositions of those witnesses as contained in the record, there is nothing therein to shew the contrary. Scriinger although present on the third, might have been also present on the fourth of September. This however, we are authorized, if not compelled, to infer from this verdict, taken in connection with the agreement of the parties j and that inference is irresistibly strengthened by that part of the verdict which identifies the paper in question, with that which was attested by Scriinger and Barrick. In relation to Barrick, Scriinger could not well have known that fact, unless he were personally present. If this is in reality, or must be taken to be the fact, upon the true construction of the verdict, then we have the testimony of both the subscribing witnesses, both as to the testator’s acknowledgment of the will, and also as to Barrick’s at- *156 *es*ati°n °f That however is entirely a matter of supererogation, as I shall presently attempt to shew. One witness is enough as to such attestation; and Bar-rick’s testimony as to his attestation, is fully equal to Scrimger’s, which, as to him, is on all hands admitted to be sufficient. Thóre is no difference between the two cases, except that Scrimger attests an actual signing-of the paper by the testator, by means of Corbin; whereas Barrick only proves his publication and acknowledgment of it j a difference which, I shall presently endeavour to shew, is entirely unimportant. An acknowledgment of a signature, is only a signing, in another form. In principle it is, in truth, a signing.
Before I go into the question whether the acknowledgment of a will, or of a signature thereto, is equivalent to an attestation of the specific fact of the signing itself; and while I do not abandon the ground I have taken, that the testator’s acknowledgment of the will before us, and the attestation by Barrick must be taken, upon this verdict, to be proved by Scrimger as well as Barrick, when Bar-rick alone (like Scrimger) was amply sufficient to establish the fact ; I must state one or two preliminary observations.
In the first place, it is not necessary that the subscribing witnesses should attest together, or at the same time.(j) Again, while it is admitted that a will must be a perfect will, by signature, or by signature and acknowledgment, quoad, every witness at the time of his attestation, yet it is not necessary that the witnesses should see the signature, or even know that the paper acknowledged is a will. All that is necessary is, that its identity in its complete state, should be established at the trial, in reference to the paper attested by the witnesses. The attesting witness, however, is not perhaps, indispensable to prove the existence of the signature, although it *157 must be shewn to be the same paper that was attested by him. We are told by Roberts on Wills, (k) on the authority of Bwinburn (and which the first author says equal- \ ly applies to devises under the statute of Charles 2nd) that the witness need not know the contents of the paper he attests : that it is one of the advantages of written wills that the testator can conceal the contents : that it is enough to shew the paper to the witnesses and say “ this is my last will,” provided they can prove the identity of the writing j and these writers recommend it to witnesses to write their names?;on the back of wills, to enable them to do this. Again, it is said,(l) that if a testator signs his will, but delivers it as his deed, it is sufficient; for, that it is not necessary for the witnesses to know that it is a will. Admitting for the present, that the acknowledgment of a paper, as a will, or of the signature, is equal to the proof of an actual signing, there may be cases in which the identity of the paper is as much established, though it was unseen by the witness, as if ho had actually seen the testator sign it; as for example, where a witness attesting a paper acknowledged to be a will, but the contents of which were not read by the witness, nor the signature seen by him, has that paper, so acknowledged, delivered to him by the testator, sealed up, and he keeps it so sealed and endorsed, in Ms desk until the time of trial; would not this be a full and complete evidence of the identity of the paper ? And if it was then found to have a signature to it, would it not amount to conclusive proof of the testator’s acknowledgment of the signature ?
These desiderata entirely exist in the case before us. The testator not only published to Barrick the paper in question, and acknowledged, it to be his last will, but the jury further find that the paper thus acknowledged to, and attested by Barrick, was the same paper that was also attested by Scrimger, and proved in the superior court *158 ^,e verdict had before found, (and you must take all its parts together,) that the paper when signed by Scrimger the day before, was then also signed by Corbin for the , ,. , testator, at his request, and the will found on the record, ancI proved in the superior court, is also found to have a signature to it. When in addition to these facts, Barrick swears, (to say nothing of Scrimger on this point,) that the paper he signed is the same paper with that thus referred to, can we by any possibility even imagine, that it was an unsigned paper, when he (Barrick) attested it ? Can a paper acknowledged and attested on the 4th, and proved and found to be the same with one signed and attested on the 3rd, and also found at a future time, to be so signed, be taken to have been, intermediately, an unsigned paper ? Is an unsigned paper the same with one that is signed ? Unless, therefore, you go in quest of quibbles, rather than of substance, it is both proved and found that the paper in question was a signed paper, when it was attested by Barrick. We are not at liberty to differ from the jury, upon this point, and to imagine that a paper was a different paper from another, when the jury have found them to be the same. It is not easy to conceive a stronger circumstance of discrimination, on the contrary, than that which exists between a complete and signed paper, and one which is only inchoate and unsigned. I do not admit that even Barrick’s evidence is indispensable to verify this fact of the identity, unless it be under the particular terms of the agreement of the parties j but if it is, we have it upon this verdict; and, as I have before said, we have that of Scrimger also.
This view of the facts of this case, brings to our consideration, the only real question existing in this cause. That question is, whether a will signed for another, by his express direction, and acknowledged and published by the testator as his will, is duly proved under that member of our statute, which legalizes a signature for a testator by the hand of another. While this question has several *159 times occurred in relation to wills signed by the testator, •with his own hand ; it has not occurred, that I can find, in relation lo a will signed for him bit the hand of another. J . . Thus the question remains to be decided upon principle ; and the enquiry is, whether there is in fact any cssential difference between the two cases. The counsel for the appellants seem to have coneeded that there is not. They seem to have conceded this, by bending nearly all tlieir force against the sufficiency of Ihe acknowledgment of a will of the first description; a course, which would have been wholly unnecessary, not to say improper, if the objection applied with more force to a will like the one before us.
As to the first question (i. e. one touching a will signed by the testator himself,) it has been expressly decided. If you throw out of view circumstances which are entirely unimportant, the case of Westbreach vs. Kennedy(m) is a direct authority. In that case as to two of the subscribing witnesses (Emerson and Bogs,) the testator only produced the will to them, published it as and for his last will, and requested them to attest it. He did not sign the will before either of these witnesses, nor acknowledge, particularly, the hand-writing subscribed to it; but only acknowledged the paper as his will. In all these particulars, that case is exactly like the case before us. That case is therefore an express authority in this, except so far as the circumstance that the testator also sealed that paper, in the presence of the witnesses, can make a difference; a circumstance, which I shall pr -sently endeavor to shew, is entirely unimportant. In that case also it is only proved, that the will appeared to be signed to the third witness at the time of his attestation ; whereas in this case, that fact is found to have had an existence, though I admit it is not found to have been signed (nor is it necessary) totidem verbis. That case is. *160 therefore, less strong in this particular, than the case be-1 fore us.
The only circumstance which can differ that case from ours, therefore, is the sealing of the will in the former. Sealing, however, is not the signing required by the provisions of the statute. It is, at most, only a circumstance going to shew an acknowledgment of such signing. It is therefore entirely unimportant, when you have, the superior and more conclusive evidence resulting from the acknowledgment and delivery. That which is only a circumstance, tending to shew an acknowledgment, is as nothing, when compared to the actual acknowledgment and delivery itself. That circumstance was therefore entirely supererogatory in that case, where the acknowledgment and delivery also existed ; nor will it be missed in this case, where we have also that acknowledgment. In that case the circumstance of sealing was, at most, only relied on as one from whence to infer an acknowledgment, and was merged (if I may so say) in the actual acknowledgment and delivery, which was proved in the case; it was included in it. It would be also held to be included in this case, if it existed, and the omission is unimportant, as it does not. Its effect and importance entirely vanishes under the solemn acknowledgment and delivery which is found to have taken place as to the will before us. The existence of the circumstance of sealing in that case, and its non-existence in this, cannot therefore differ two cases, to which the actual acknowledgment itself is common ; and which, as to all important particulars, are precisely the same.
This would be the result, in relation to a mere circumstance, however important and unexceptionable. The objection holds with increased force, however, as to the mere fact of sealing, considered as a circumstance authenticating a signature. Such sealing is entirely of a weak and unimportant character. It is entitled to but little weight indeed. Thus, it is said by chief justice *161 Willes in Ellis vs. Smith,(n) that sealing is not signing, Again, it is said in Powell on devises,(o) that sealing being at the time of making the statute no longer a mark . . ... ,' . or distinction (as it certainly is not, when the sealing is with a wafer or a scroll,) tiiat circumstance was rejected, and a signing by the testator substituted. Again he says (p) that sealing is not signing; for, that if it were, it would be very easy to forge a will, which, in relation to the hand-writing of the testator, is more difficult. It is also said, that while sealing is no longer so distinguished as to identify the fact of the signing, the acknowledgment of that fact is considered as a proof thereof. Scaling then being repudiated as a signature, on account of its incómpetency to discriminate one paper from another, it has little or no weight, when used to identity a signature. Every seal wants an ear-mark to distinguish it from other seals. It is attempting to prove notioraper ignobius $ and the sea! itself is snore uncertain and unknown than the signing it is intended to authenticate. I hazard but little, therefore, in saying that this circumstance is entirely weak and unimportant j and that its weight is as nothing, when compared to a solemn acknowledgment and delivery itself, as in the case before us. The former circumstance is entirely subordinate and inferior to, and is comprehended within, the latter.
I throw, therefore, out of the case of Westbreach vs. Kennedy, as being entirely deceptive, subordinate and unimportant, the fact of the sealing which existed in that casej and then the two cases are precisely alike. Then it is decided, that the acknowledgment of the will is entirely sufficient, and that there need nest bo a specific acknowledgment of the signature to IL It pats to rest the doubts on this subject, which had, before, been mooted in the English courts, and advances a step further in relation to the statute, in 'favor of common sense. If I acknow *162 ledge a paper as my will, which has my signature an-, to it, I acknowledge that signature in common with every other part of the writing.
_ , , , . . ... .., . But this last decision was not wanting to settle this question, conclusively, to my satisfaction. It had been before settled, upon the principle of the adjudged cases. Thus, in the case of Grayson vs. Atkinson,(q) while it was admitted by the court that the question whether the acknowledgment of the signature was sufficient, had been vexata qucestio, it was decided to be sufficient. It had in this case been objected, that as the word “ attested” was added to the word “ subscribed,” in the statute, it imported that the witnesses must attest the very fact of the signing, and that an acknowledgment of the will, or even of the signature, was not sufficient; but it was resolved by the court, that the attestation of the acknowledgment of the will, is an attestation of the fact acknowledged, and is to be construed according to the rules of evidence, applying as at the time of enacting the statute, in other cases ; as in the case of a bond, for example, which being made and signed, and afterwards acknowledged before others, by the obligor, to be his bond, was held to be evidence of a signing by him. Again, it is said in Powell on devises,(r) that as an attestation upon an acknowledgment is good in every other case, so it is in the case of a devise. Again it is said,(s) that an acknowledgment of an instrument as a man’s deed, necessarily implies a delivery of it$ and in principle there is no difference between that case and the one before us. You can as well imply a signing, as a delivery of a given instrument. The first as well as the last is incidental to the acknowledgment. Again, we are told,(t) (and it is an authority decisive of the question before us,) that although the statute of Charles says, that the will must be signed by the testator, yet that an acknowledgment of the signing is *163 as good as proof of seeing the testator sign. It would indeed be an anomaly in the lavs', if it were not so. In all other cases, the acknowledgment of the fact in ones-70 tion, is fully equal to any evidence of it.
I take it therefore to be a point not at this day to he questioned, that the acknowledgment and publication of a paper as a will is a sufficient proof of the signing thereof, if it further appears, that the paper has a signature. If there was any doubt before, the case of Westbreach vs. Kennedy has put the same at rest; to say nothing of the unanswerable principles on the subject of acknowledgment, to which I have adverted. There is, perhaps, however, no adjudged case in relation to a will signed for another, as in the case before us. That, however, is not very strange, when there is perhaps but a single conclusive decision in relation to the more common case of a signature by the testator himself. There is however no decision against us, and in principle there is no difference between the two cases. It was indeed said by lord Hardwicke in Ellis vs. Smith, that the decision then to be given might lead the way to further deviations from the statute; and by consequence to allow the testator’s declaration that another signed by him, to be good. He added, that an authority given by a testator is a collateral thing and ought to be proved; and that consequence is not to be built upon consequence, in cases of this kind. I will here remark, that these observations of this judge, are entirely obiter and extra-judicial: that they did not apply, at all, to the case then before the court: that this point had not been argued: and that every thing collateral or not collateral which is susceptible of proof, is also capable of being acknowledged j which acknowledgment is indeed only a superior species of proof. The signing of a will for another, at his request, is indeed rather a more complex idea than a signature by one’s self; but it is equally within the knowledge and power of the party : it is equally susceptible of proof. Admitting the existence of the signature, I am just as competent to admit *164 that it was made by another at my request, as that it was annexed thereto, by myself. Although there may be shades and degrees of difference between the facts thus admitted, there is no difference in principle between them* I* would be. an useless waste of time to pursue this discussion any further. The counsel for the appellants wisely disclaimed a difference between the two cases; or if they made any difference, it was but a faint one. In fact and in principle, there is no kind of difference between the two kinds of signature, now in question. In both, the testator is competent to acknowledge that, which, taken in reference to the case before the court, complies with the requisitions of the statute. The general acknowiedginent of the testator, comprized in the case before us, carries with it all the particulars. It is equivalent-, as applied to this case, to a specific acknowledgment by the testator, that- the will was signed at his request, by the hand of another.
These are my sentiments upon this case, after a long and mature consideration. I am therefore clearly of opinion, that the will in question has been duly proved, according to the requisitions of the statute ; that the decree of the court of chancery which has affirmed the judgment of the superior court, and the conditional verdict of the jury, should be itself affirmed ; and that the will before us should be established. The other judges are, however, of a different opinion; and their decision is, that the decree should be reversed, and the following entered as the opinion pnd decree of the court:
“ This day came the parties,” &c. “ and the court,” &c. “ is of opinion, that the paper-writing in the bill men- « tioned, which.is alledged by the appellees to be the last s< will and testament of James B Burwell, is not proved “ by the attesting witnesses according to the act of as-(i sembly referred to in the verdict, and that the said deeí cree, so far as it establishes the said paper-writing to “ be a good devise of real estate, is erroneous. There- « fore it is decreed,” &c.

 1 Vez. junr. 11.

 By some accident this opinion is not in the possession of tlie Reporter | Tml if it can he procured hereafter; it shall he given in the append!::.

 3 Lev. 1.

 2 Vezey, senr. 454.

 1 Vezey, junr. 11.

 Mitf. ss.

 1 Ath. 570,

 1 Strange, 708,

 Mitf. 25.

 Mitt 35.

 7 Bac. abr. 30.

 Page 23.

 Bac. abr. 317.

 l Vez, and Beams, 302

 1 Vez. Jr. p. 11.

 p. 76.

 p. 67.

 2 Vez. 456.

 page 71.

 p. 76.

 ib. p. 121.