Judge Carr
delivered the opinion of the Court.*
This is a contest about the due execution of a Will before the Court of Probate. The Court below decided, that the writing was not executed as a Will of real estate, according to the Act of Assembly, and therefore, refused to record the same, as such; but ordered, that the said writing be recorded as a Will of personal property. From this Judgment, both parties appealed.
*34 Our Statute directs, that “such last Will be signed by the testator, or by some other person in his presence, and by his direction; and moreover, if not wholly written by himself, be attested by two or more witnesses in his presence. ” To the Will before us, as first published, there are two subscribing witnesses, Lawrence Pendergast and Elizabeth Jones. Mrs. Jones proves, that the testator asked his wife to get the paper: that she read it to' him: that this was before signing: that the testator said it was his Will, but he could not write at that time; that Pendergast put the name and mark of the testator to the Will, and then put his own name, and took hold of the witness’s hand made her mark, (she being illiterate.) The Will, as exhibited, shows the name and mark of r.he testator signed to it, and the name of Pendergast, with the name and mark of Elizabeth Jones, as subscribing witnesses.
Pendergast is not produced. If he had been examined", and hiá evidence had agreed with that of Mrs. Jones, we should have had no doubt, that a Court of Probate ought to have admitted the paper to record as a Will of hands; for, the record showing the fact that the testator could not write, being paralytic, and that he was in possession of his understanding, we think the evidence of these subscribing witnesses would have proved circumstances, from which a Court of Probare niudifc to have concluded, that the Will ivas signed by Pendergast for the testator, “in his presence and by his direction, and moreover, was attested by two witnesses in his presence.” We do not mean to say, that the foots deposed to by Mrs. Jones, wonhí. if found in a special verdict, authorise a Court acting upon it, to say find the testator’s name was signed by his direction. The Coiut in that case could infer nothing. The actual fact must be. four'!; and that was the case in Burwell v. Corbin, 1 Rand. 131. The Court there was acting on a special verdict. But, we consider that a Court of Probate the of a as to facts, arid the:. a Jury ought, from such evidence, to have found the Will duly executed.
in tin* case of Bond and Wife v. Seawell, 3 Burr, 1773, it was agreed, that the facts should he put into the form of a special verdict, for the Judgment of the Court. It appeared, that the testator made his Will, consisting of two sheets of paper, and signed his name at the, bottom of each page. He also made a Codicil upon a single sheet. .All was in his own hand-writing, (which, by the way, has not. the ciie.et in England that it has with us.) He called in one Harding, showed him both sheets, and his signature to every page, and told bin: 'hat was his Will He also showed him the Codicil, and desired him to attest both; which he did, and then left the room. Vaughan *35 ‘ and Lcylancl came in immediately after. The testator showed them the Codicil and the last sheet of the Will, and sealed both, before them. He took each of them up, and delivered them as bis Act and Deed. These witnesses attested the same in the testator’s presence; but never saw the first sheet of the Will, nor was that sheet produced to them; nor was the same or any other paper, on the table. Both the sheets of the Will was found with the Codicil, in the testator’s bureau, after his death, all wrapped up in one picec of paper; but, the two sheets of the Will were not pinned together. On this case, there were three arguments; one, before all the Judges Lord Mansfield delivered the result. He said, that “the case, as itnow stands, turns only upon the solemnity of the execution; and lhac if: had occurred to the Judges, that the way in which the parties had put the case, does not go to the whole merits; because, if the first sheet was in the room, at the lime when the latter sheet was executed and attested, there would remain no doubt of its being a good Will, and a good attestation of the whole Will. But, if the first sheet "wore not then in the room, a doubt might arise, whether it was or was not a good attestation as to the real estate, a doubt ’ about which the Judges have neither given, nor formed, any opinion. We are of opinion, that the due execution of this Will cannot be come at, in the method wherein the matter is now put.
If this be considered as a special verdict, wo think it is defectively found as to the point of the legal execution of the Will. Every presumption ought to be made by a Jury in favor of such a Will, when there is no doubt of the testator’s intention. It is not necessary, that the witnesses should attest in the presence of each other; or that the i estator should declare the instrument, he executed, to be his Will; or that the witnesses should attest every .page, folio, or sheet; or that, they should know the contents; or that each folio, page or sheet should be particularly shown to them. This has been settled- But the fact, whether the first sheet of his Will was in the room or not, at the time of executing and attesting the latler, may be material to be known. If it was, the Jury ought to find for the Will generally; and they ought to find all things favorable to the Will. II it be doubtful, whether the first sheet was then in the room or not, we all think the circumstances sufficient to presume that it was in the room; and that the Jury ought to be so directed. But,” (he adds,) “upon a special vérdíct nothing can be presumed. We are, therefore, all of opinion, that it ought to be tried over again,” &c. This is high authority, and lays down very clearly the distinction between :he powers of a Jury, trying evidence, and of a Court acting on a special verdict. It shows, too, in a strong point of view, how careful the *36 Court is in such casos, where a Will, the last and most solemn act of a man’s life, is involved, to put the case in such a shape, as to enable them to come at the whole merits. The cases of Hands v. James, Com. Rep. 531, and Croft v. Pawlet, 2 Stra. 1109. show the power and province of Juries, in cases of this kind. We repeat, that we think the Court, of Probate has the same power. All this is said upon the hypothesis that Pendergast had proved the same facts with Mrs. Jones; but ho was not examined. We think that if it had been piovcd to the Court, that he was dead, or that he was beyond the process of the Court and the power of the party, that the Court might have-resorted to secondary evidence, and that the proof of Pendergast’s hand writing, together with the evidence of Mrs. Jones, would, in that case, have authorised the Court to admit the Will to record as a Will of lands. It was proved that Pendergast was an itinerant unsettled man: that he lived in Ilenvico, when the Will was executed, and removed afterwards to Augusta, and after the Court had pronounced its opinion hut during the same term, the party seeking probate of the Will, offered proof to the Court, that a Subpoena had been sent to Augusta, for Pendergast, and also the Affidavit of a Mr. Todd, that he had been to Campbell, where Pendergast lived in 1821, and was told there, that Pendergast had removed to Alabama Now, though this evidence was not such, as to authorise the Court to act upon the ease at once, as if Pendergast was beyond the power of the party; yet we think it was such as laid a very strong ground for the belief that the fact wouhl turn but to bo so: and that the Court ought, under such circumstances, to have recalled its decision, the cause being perfectly within its power, and 1o have continued the cause, to give the party an opportunity to prove that Pendergast had actually removed from the State.
If it be objected, that such a course would be dangerous, as giving the party an opportunity to accomodate his evidence to the opinion pronounced, we answer, that a Judge must in such casos be allowed considerable latitude of discretion: but that still he must exercise it soundly, and we must judge of its soundness. We do not think this one of the cases, in which there was danger of subornation from a continuance.
If it be further objected, that there was no motion made for a con-t linuance, but only that the Court would add to the record the evidencc then offered, we answer, that the first motion was to receive the evidence. If it had been received, wc do not know what motion might then have been made. But the Court refusing to receive the evidence at all, because it had rendered Judgment, *38 flic paily was stopped at the threshold, and could only except to ILq opinion, and thus get the evidence upon the record. We think the Court ought to have received the evidence, though it had rendered Judgment; and though the form of the motion might'not have been exactly right, that the Court, seeing the probable ground laid for resorting to the secondary evidence, ought to have taken the step proper for obtaining proof; and this opinion is much strengthened by the case from Burrow, where we' see the pains the Court took (though the parties had made a mistake) to put t-he case in such a shape, as to enable them to come at the whole merits of the question.
The Judgment must'be i-eversed, and the cause sent back, with directions to the Court to allow the party a reasonable time to obtain evidence of the absence from the State of Pendergasl, if ho be absent, and if not, to obtain his evidence.

 Judges Orees and Ccea/mt, absent,