Lee, J.
The will in this case was attested by the witnesses subscribing their names as such in a different room from that in which the testator was lying at the *68 time: And I regard it as proved in the cause that the testator could not see the witnesses in the act of either from the bed on which he lay, or ^,om any g^gj. place within the room. One of the two subscribing witnesses states that they could not have been seen in his opinion from any part of the room, whilst they were subscribing their names to the will: The other witness stated that it was impossible that they .could be seen from the bed whilst attesting the wjíl, but expresses the opinion that a person standing iii the door of the room in which the testator lay, might have seen them by some turn of his body, if all the doors had been open. If this had constituted the whole case on this point, without stopping to enquire into the wisdom or soundness of the distinction between an attestation in the same room with the testator and one in a different room, which has been so often taken and reiterated by the courts, I should have no hesitation, in conformity to repeated decisions, in saying that the attestation was insufficient, and that the will could not be sustained. But there is another and an important feature in this case, which has been the subject of earnest discussion by the counsel. It appears that after the testator had signed the will, the witnesses who were present being requested to attest it, went together into another room for that purpose; it being inconvenient to do so in the room in which the testator lay. They did so, by subscribing their names, no other person being in the room with them at the time, and immediately returned together, with the will, into the room where the testator was lying in bed. Not more than a minute or two elapsed from the time they went out of the testator’s room to attest the will until they returned with it. They then took the will to the testator lying in bed, and both the witnesses being together, one of them, Crawford, said to him, “ Mr. Sturdivant, here is your will witnessed,” at the *69 same time pointing with his finger to the names of the witnesses, and holding the will open before him; the names of the witnesses being on the same page close to that of the testator. The testator took the paper into his hands, and looked at it as if he was examining it, still holding it in the same position. The witness giving this detail supposes that he saw the names, the paper being near enough to him to see them. He (the testator) then closed the leaves, and perhaps folded the sheet crosswise. He was then told that as he was ill, he had better give the will to some one to keep for him. He enquired whether if he got well, he could take it back from the person to whom he should give it. Being assured that he could, he said, “ It is my will and I wish it to stand; but I may hereafter, on getting well, wish to make some slight alteration in it.” The testator then handed the will to a friend who was present. In this account of what transpired on this occasion, both the subscribing witnesses concur; and we are thus brought to consider the effect of what occurred in presence of the testator immediately after, but in close connection with the manual act of the witnesses in subscribing their names, in its bearing upon the attestation, involving the question already so often discussed as to the true construction and meaning of the terms “ in the presence” of the testator, as used in the statute of wills, and what conjuncture of circumstances may or may not constitute such presence as is intended by the act.
That these terms do not in their legal signification necessarily imply that the testator and the witnesses shall be in the same room at the time of the attestation, is sufficiently established by the numerous cases in which an attestation in a different room from that which the testator remained, has been held good.
Nor indeed, is it indispensable that they should be in the same house, as is shown by the case of Casson v. *70 Dade, 1 Bro. C. C. 99, in which the testatrix signed the will in her carriage in the street, and it was then by the witnesses into an attorney’s office, and ere subscribed by them; the lady remaining in her carriage, from which, as it appeared, what passed within the office might have been seen. So it is equally clear that actual sight or inspection of the process of the witnesses signing their names, is not required; for all the cases agree that it is not necessary the testator should actually see the witnesses subscribe, but only that he may see if he will. Nor indeed is even the ability to see necessarily implied, because it is well settled that a blind man may make a will; for the faculty of sight in such a case a concurrence of other circumstances being substituted, which give adequate assurance that he is acquainted with the contents of the instrument, and intends to make the testamentary disposition which it contains. Boyd v. Cook, 3 Leigh 32; Longchamp v. Fish, 5 Bos. & Pul. 415.
In determining, therefore, the legal force and import of the word “presence,” we are not to be restricted to the sense in which it is used in common and familiar parlance; but in order to decide whether it may be predicated in a legal sense of any particular case that the witnesses subscribed their names in the presence of the testator or otherwise, we should look to the whole character of the transaction and all the attendant circumstances. Whether the witnesses have attested in presence of the testator, in its enlarged and legal sense, is a fact for the consideration of the jury, under all the circumstances of the case. Pow. on Dev. 98; Croft v. Pawlet, Stra. R. 1109; Hands v. James, Com. R. 531.
Where the enacting words of a statute are plain, precise and unambiguous, even a positive declaration of the preamble will not be suffered to control them; but where an expression is used, which from its nature *71 is somewhat vague and indefinite, to determine its meaning, resort may properly be had not only to the preamble, but also to the reason, spirit and policy the law, as deduced from the nature and character of its provisions, though nowhere expressly declared upon its face; and such a construction should be adopted as shall, without doing violence to the terms which are employed, best promote its object and intention. 1 Kent. Com. 460 to 468.
It has been said by some of the judges in England, and repeated by several of the judges of this court, in construing the statute of wills, that the object and policy of the law is to protect the testator against the substitution of other persons as witnesses to the solemn act of the testamentary disposition of his property, in place of those in whom he confides and whom he has selected; and also against the imposition upon the testator or the witnesses of a supposititious will in lieu of that which he has in fact executed. And the idea is that these objects of the statute are effectively carried out by requiring the attestation to be under the immediate supervision and control of the testator, so that he may, at any moment during the process, arrest it if he will; and it is supposed that the knowledge of this on the part of the witnesses and of all others who are present, will sufficiently guaranty against fraud or foul practices. It will not be pretended, however, that this provision can furnish absolute security against the fraud of a different paper or different witnesses being imposed on the testator; and there can be little doubt that such a fraud will be best and most surely detected by looking to all the circumstances attending the transaction.
Now, in regard to the amount of security against fraud that may be furnished by different modes of attestation, I apprehend it will not be doubted that a recognition by the witnesses requested by the testator *72 to attest his will, of their signatures written upon the instrument, as those of the subscribing witnesses, recognition and acknowledgment is made by witnesses within the immediate sight and hearing 0f the testator, and whilst they are within the reach of his arm, and in point of time immediately or within a minute or two after they had subscribed their names, though for the sake of convenience, in a different room, the testator having immediately before executed it as his will, after having heard its provisions read article by article, and approved them all, will furnish as perfect and complete a security against the frauds and imposition sought to be guarded against by the statute, as the actual manual operation of writing their names by the witnesses under the very eyes of the testator. The identity of the witnesses is equally well assured in both modes; while that of the paper is, in many cases, better ascertained by the former than it'possibly could be if the attestation were within the view or range of vision of the testator: As for example, where the process, of subscribing their names is performed by the witnesses in the same room with the testator, yet they happen to sit or stand at a desk with their backs to the testator, so that the paper itself and the act of writing upon it, cannot be seen because of the interposition of the bodies of the witnesses ; or where the act of subscribing, though within the range of the vision of the testator, yet is at such a distance from him that it may be difficult or impossible for him to recognize either the paper itself or the writing upon it, especially if the testator be aged or infirm, or his sight impaired from any cause; or in the case of a short-sighted person requiring the aid of glasses, which happened not to be in use at the time. Certainly, no distinction can be drawn in favor of eyesight, so far as security against fraud is concerned, in preference to the recognition of their signatures by *73 the witnesses to the testator himself under the circumstances supposed, and the return of the paper at once into his own hands. The former may furnish moral control over the subject, explained by Judge Carr, in the case of Neil v. Neil, 1 Leigh 13. The latter affords that, and in the restitution of the paper, with their signatures upon it, and openly acknowledged by them, something besides, which even more perfectly completes the superintendence of the testator. It establishes such a connection between the testator, the will and the witnesses, as seems to preclude all danger of fraud or imposition, even more effectually than the former.
It is evident, that most or all of the judges, whose opinions have been reported upon the construction of the statute of wills, have proceeded upon the concession that a consideration of the object and policy of the statutory requirements would lighten the path, and furnish a safe and proper rule for their construction. If, then, this object and policy be to guard against fraud, and if the mode of attestation sought to be maintained in this case, does establish such a connection between the testator, the will and the witnesses, as attains this object as effectually as would the actual ocular inspection of the very act of signing by the witnesses, or more so, and in effect excludes almost the possibility of fraud, I cannot perceive, in view of the liberal construction which has already, in different cases, been placed upon the terms “ in the presence of the testator,” how, in holding such an attestation to be good, we shall be extending the meaning of those terms any farther, or even as far as the courts have already gone.
I agree that it is not competent for the court to adopt another and different mode of attestation than that directed by the statute, and to hold it good and sufficient, though not conforming to but conflicting *74 with its terms, merely because in its opinion it is as we^ (or better) calculated to prevent fraud as that by the terms of the statute. But the ques-^on we have to consider is, whether the mode of attestation adopted in this case is not in conformity to and fully embraced by the terms of the statute, when a fair and reasonable construction is placed upon them.
It is said by the court, in the case of Seguine v. Seguine, 2 Barb. Sup. Ct. R. 385, 393, that a literal compliance with the terms of the statute of wills is not necessary; that a substantial compliance is all that is required. And it is said in another case, with great force and correctness, that the only sure guide for the court is to look at the substance, sense and object of the law, and with the'aid of these lights to endeavor to ascertain if there has been a substantial compliance with its provisions. Chief Justice Nelson, in Remsen v. Brinkerhoff, 26 Wend. R. 325, 332. The correctness of these remarks is fully vindicated by the course of the adjudications that have been made upon this statute from time to time ; for it will be found that in interpreting its provisions the courts have exercised a reasonable and proper liberality for the purpose of sustaining the testamentaiy right intended to be thereby secured; and they have always evinced a strong disposition to sustain a will fairly made, and not suffer it to fail for a mere slip in form. At one time we see it was made a question whether the witnesses must not actually see the testator sign; and whether an acknowledgment by him of his signature would be good. Gryle v. Gryle, 2 Atk. R. 176; Cook v. Parsons, Finch’s Prec. Ch. 185; Lea v. Libb, Carthew’s R. 35. And in some cases it seems the testator would go over his name again with a pen: but after some discussion, it was settled that an acknowledgment by the testator to the witnesses, of his handwriting, would be sufficient. Stonehouse v. Evelyn, 3 P. Wms. *75 251; Dormer v. Thurland, 2 P. Wms. 504; Grayson v. Atkinson, 2 Ves. sen. 454. The question then arose whether an acknowledgment by the testator that instrument was his will would be sufficient to authorize the attestation by the witnesses, and make it a good will. It was decided that it would be; and it was also held that the attesting witnesses need not be all present at the same time, but that they might attest at different times. Ellis v. Smith, 1 Ves. jr. 11; Westbeach v. Kennedy, 1 Ves. & Beame 362. In the case of Ellis v. Smith, the lord chancellor, in delivering his opinion, intimated that although the testator’s acknowledgment would be sufficient where the will was signed by himself, yet it did not follow that his admission that another had signed for him would be good; and he says, “that consequence is not to be built on consequence in cases of this nature.” Yet we see that the doubt raised by these remarks of Lord Hardwicke has been fully solved; for this court has decided that if the name of the testator have been signed by another person, an acknowledgment by him that the instrument is his act, is a recognition and ratification of the signature as having been made for him in his presence and by his direction. Rosser v. Franklin, 6 Gratt. 1, 25. It was also questioned whether the witnesses did not see the testator sign and no acknowledgment was made by him that the subscription of his name is his signature, it would not be necessary that he should acknowledge the instrument to be his will; but it has been fully settled that it is not, and that it is sufficient if the testator acknowledge the act to be his, with a knowledge of the contents of the instrument and a design that it should be a testamentary disposition of his property, though the witnesses sign in entire ignorance of the nature of the instrument or of the purpose for which them names are written. White v. British Museum, 6 Bing. 310, 19 *76 Eng. C. L. R. 91; Wright v. Wright, 7 Bing. 457, 20 Eng. C. L. R. 197; Rosser v. Franklin, 6 Gratt. 1. Other instances might be cited of the liberality of the cour£g jn construing the statute in support of wills, free from suspicion of any unfairness.
The statute provides that the will shall be signed by the testator, or by some other person in his presence and by his direction; and (if not olographic) shall be attested by two or more credible witnesses subscribing their names in his presence. No distinction can, however, be successfully maintained between the two forms of expression used in relation to the testator and the witnesses, respectively. Such a distinction was attempted in the case of Harrison v. Elvin, 43 Eng. C. L. R. 658, in which one witness signed his own name and then took hold of the hand of the other who could neither read nor write, and in that way wrote the name of the latter. It was argued that as the statute provided for the signing of the testator’s name by another for him, whilst it said that the witnesses must subscribe their names, the name of a witness must be written by himself, and could not be written for him by another. The argument did not, however, prevail; for the court held that the name of the witness might well be subscribed by another for him, at his request. The same view was taken by this court, in the case of Jesse v. Parker, 6 Gratt. 57. Judge Allen, in delivering the opinion of the court, recognizes if as settled law that a subscribing witness may attest a will by making his mark, his name being written by another in his presence and at his request. But he adds, that the validity of such an attestation depends upon the signing of the name of the witness by his authority :and in his presence, and not upon the fact of his making a mark or doing some manual act in connection with the signature. The making of a mark would furnish little if any means of verifying the signature, *77 and the doing some manual act in connection with it would furnish no additional safeguard appearing on the body of the instrument, against those frauds which was the object of the statute to prevent. Now, if a testator, whose name has been signed to his will by another person, shall, by simply acknowledging that the act is his, be held to recognize and ratify the signature as having been made for him in his presence and by his direction; or if it have been signed by himself, shall be held by such acknowledgment to recognize and ratify the signature; and if a witness to a will may, for the purpose of attesting, adopt and ratify the signature of his name written by another to the will, by his authority and in his presence, and such attestation shall be good itself, without the aid of a mark or any other manual act done by the witness in connection with the signature, it is difficult to perceive why the witness may not, by recognizing and acknowledging in the presence of the testator the signature of the name made immediately before by himsdf though the manual act of writing the name were for convenience merely, done in another room, thereby perfect a good and valid attestation. Where the witness attests by adopting his signature written for him by another, the authenticity and efficacy of the act are in no sort increased by the testator’s seeing that other write the witness’s name, but must depend upon its being done for the witness in his presence and by his direction, and his adoption of the same as his own.
And so, if his signature have been in fact written by himself, though not in the view of the testator, his acknowledgment and recognition of it as his own, at least under the circumstances disclosed in this case, immediately after and in close connection with the signing, within the range of the sight, the hearing and the touch of the testator, with the will and the names upon it in perfect view, and brought to his immediate *78 attention, ought, as it seems to me, to have the same legal effect as the actual ability of the testator to have seen the manual act of the witnesses in putting their nameg £he paper, which it is contended alone will suffice. Certainly, the latter could have added nothing to the means of verification or the security against fraud.
The counsel for the appellee has, however, cited the case of Dunlop v. Dunlop, 10 Watts’ R. 153, as maintaining that the subsequent recognition and ratification of his signature to a will even by the testator, will not give it validity, and that if his name have been written for him by another, a previous authority or direction so to do must be shown. It will be found, however, that the chief justice, in delivering the opinion of the court in that case, founds it upon the terms “ express direction,” used in the Pennsylvania statute; and which he says were employed for the very purpose of excluding entirely the doctrine of signing by construction. He treats the subject as res integra, regards the English decisions upon the statute of Charles in relation to the point as inapplicable by reason of the different terms of the Pennsylvania statute; and considers the terms “ express direction” as necessarily importing something antecedent to the intended act, and as utterly excluding a subsequent ratification, which he says is the equivalent of authority by implication only. In our statute, however, the term used is by “ direction” of the testator, not “ express direction,” and this court has fully adopted the English decisions recognizing the validity of a constructive signing, which are thus repudiated by Chief Justice Gibson. I will only refer to Dudleys v. Dudleys, 3 Leigh 436, and Rosser v. Franklin, before cited.
It is true our statute directs that the witnesses shall sign in the presence of the testator, while it does not in totidem, verbis require that the testator shall sign in *79 the presence of the witnesses. But it is difficult to infer that a difference in meaning was intended. The will must be in writing: it must be signed by testator or some one for him in his presence and by his direction, and if not olographic, must be attested by two witnesses. These things are to be proven, and the subscribing witnesses must be called. They can,' however, only prove that they attested; and they could only attest to what took place in their presence. In truth, it is impossible to explain the various adjudications that have been made affirming the validity of these constructive signings by the testator, by referring them to any supposed distinction between the force and effect of the tei’ms used in the statute in reference to him and those in reference to the witnesses. The true explanation is to be found in the disposition of the courts, by a liberal and beneficial construction, to give effect to the testamentary right which it is the intention of the statute to protect and secure.
It will not be controverted at this day in Virginia, that a deed, will or other instrument of writing, will be sufficiently established by proof that the signature or the instrument was acknowledged by the party in presence of witnesses who were not present when the paper was signed, and who might be wholly unacquainted with the handwriting of the party. In Burwell v. Corbin, 1 Rand. 131, Judge Coalter says, that it was found by the courts that an acknowledgment of the handwriting of the signature to a will was as good, nay better, than resealing, (which had previously been held sufficient,) which at most could only be considered as a recognition of the name opposite to the seal; and that it was even better than di’awing the pen over the name again, which had been thought might be a re-execution; that by doing these acts before different witnesses at different times it was considered that the testator had in fact signed before each witness. Judge *80 Brooke says, (p. 149,) “ If Burwell [the testator] had acknowledged the signature to be his, it would have proof of the factum of signing, within the cases of Grayson v. Atkinson, and Ellis v. Smith, in which the question was whether the signing was proved according to the statute. Judge Roane says, (p. 156,) “ an acknowledgment of a signature is only a signing in another form. In principle it is in truth a signing.” And in the case of Doe v. Roe, 2 Barbour’s R. 205, it is said that the acknowledgment of the signature is equivalent to a new signing of the instrument. Now it is difficult to perceive any good reason why a given act which when done by the testator in presence of the witnesses, shall be a good signing (in legal effect) of his name in their presence, yet when done by those witnesses in presence of the testator, shall yet not be a good signing of their names in his presence, though done immediately after and in close connection with the very writing of their names, and as part of one entire transaction, beginning with the execution of the paper as his will by the testator, and ending with the act in question.
It is contended, however, that the subsequent recognition and acknowledgment by the witnesses, relied on in this case, must be dissévered from the act of signing their names; that it constitutes no part of the res gestae; and that as the act of subscribing by the witnesses was complete when they wrote their names, nothing subsequently done, short of a new subscription in the view of the testator, could give effect to the nugatory act of subscribing in a different room from that in which the testator lay. This idea of the completeness of the act of subscribing is, I think, not well founded. If it had been in the immediate presence of the testator, and had thus constituted itself a perfect attestation, there might be some plausibility in it; but the very fact that it was in itself a defective attesta *81 tion, was the very reason for the necessity of some further act to cure the defect and make it legally sufficient. But even if it had been itself a good tion, it did not necessarily determine the tissue of the res gestae. In Parke v. Mears, 2 Bos. & Pul. 217, a bond had been executed and attested by one subscribing witness in one room, and in a few minutes after, it was attested by another subscribing witness in a different room; the first subscribing witness remaining in the room in which the instrument had been executed. At the trial the second subscribing witness was called to prove the bond; and it was contended that his evidence was insufficient; that he was not present at the time of the execution, which had been completed by the attestation of the first witness before he was called on to attest; that his attesting subscription was nugatory, and that the other was the subscribing witness, who, according to the rule, must be called to prove the instrument. The court, however, thought the whole might be regarded as one transaction, and held the bond well proved. In the case of Swift v. Wiley, 1 B. Monr. 114, two of the witnesses had subscribed their names as such to the will in the presence of the testator, and at his request, but some hours before it was signed by the testator, at which time it was attested by a third witness, and the two who had subscribed their names before the will was signed by the testator, then again acknowledged their respective signatures as subscribing witnesses. Now, it might have been said here, that as the will was not yet signed by the testator when the two first subscribing witnesses wrote their names as such, their so subscribing was a nugatory act, and incapable of being ratified by any subsequent act: but the court thought otherwise. It said that it would have been a superfluous and puerile act of mechanical repetition for the two witnesses who- had subscribed before the will was *82 signed, to resubscribe tbeir names, having once subscl'ibed in presence of the testator and at his request, the paper was then unsigned by him. And it a(j¿e¿ that were ft material the subscription of the names of all three witnesses and of that of the testator might with obvious truth and propriety be considered as one series of acts essentially indivisible in point of time, all three witnesses being present with the testator at the consummation of the process, and all then attesting together. The principle of these cases has been recognized in the cases of Doe v. Roe, 2 Barb. Sup. Ct. R. 200; Seguine v. Seguine, Id. 385; and Rosser v. Franklin, 6 Gratt. 1; in all of which it is held that if the various acts constituting the execution and attestation of a will are done at the same interview, one act following another without interruption to the continuous chain of circumstances, they are to be considered as all done at the same time, and all constituting part of the res gestee, and in effect making one transaction. And in this case, without extending this opinion, already too long, by a recapitulation of the various acts attending the execution and attestation of the will, I will only say that I regard the recognition and acknowledgment of their signatures by the witnesses to the testator, as properly constituting a part of the res gesta, and to be taken in connection with all that preceded it, and the whole as constituting but one transaction.
Certain cases have been referred to by the counsel as authorities opposed to the validity of the attestation in this case. I will notice them very briefly.
One of these is the case of Edelen v. Hardy’s lessee, 7 Har. & John. 61. But in that case the question did not arise, because the person who took the will into the room where the testator lay, after it had been subscribed by the witnesses, and told the testator that it had been signed by them, showing at the same time *83 their handwriting, was not himself one of the number, and no act of recognition or acknowledgment was shown on the part of either of the three Nor did the question arise in the case of Boldry v. Parris, 2 Cush. R. 433. There the signatures of the two witnesses who had subscribed out of the room were shown to the testator by the other witness who had signed before them, and it does not appear that either of the two was present or did or said anything in acknowledgment of his signature.
The cases of Ragland v. Huntingdon, 1 Ired. R. 561, and Graham v. Graham, 10 Id. 219, approach nearer to this case. But with all my respect for the learned court by which they were decided, I have yet been unable to concur in the opinion delivered in either case. I consider the first of these cases as strongly conflicting with the cases above cited from 2 Barbour and 6 Grattan, and also with the case of Pollock v. Glassell, 2 Gratt. 439. And it may be remarked of both that there was no distinct act of recognition by the witnesses of their signatures in the presence of the testator, which should be deemed equivalent to a resubscribing. In the case of Graham v. Graham, no allusion whatever is made to this question, nor is the effect of what the witnesses stated to the testator after the attestation discussed or considered.
Certain cases in the ecclesiastical courts of England have also been cited as disaffirming the validity of such an attestation as that we are considering. In relation to these I will content myself with saying that they are made upon the construction of the statute of Victoria I, ch. 26, which differs from the Virginia statute in several respects, and which it is said was intended to repeal the decisions made by the courts on the statute of Charles the 2d. Very many of them are made upon motions to the court without full consideration, and they are not regarded as bind *84 ing upon the court by which they are made. They certainly cannot be regarded as entitled to sufficient weight in this court to induce it to recede from the ]qm^-g wjiieh it has already gone in its interpretation 0f our statute, following the lights of the English decisions upon the statute of Charles, how much soever the effect of these may have been done away with by the statute of Victoria. So far as their reasoning and results receive the approbation of our own judgment, they should be followed, but no further.
The case of Neil v. Neil, 1 Leigh 6, has been frequently referred to in the course of the argument, and has been strongly relied on as conclusive against the validity of the attestation in this case. That was the case of an attestation of a will in the same room with the testator, and under different circumstances from those of the present case. But it is insisted that the reasoning which prevailed against the will in that case is a fortiori decisive against it in this. Of this case of Neil v. Neil, I am very free to say that my judgment never was satisfied either with the reasoning of the majority of the court by which it was decided, or with the conclusion at which they arrived; and if I were now called upon to pass upon precisely such a case as res integra, I should be for sustaining the validity of the will. But as it is, regarding it as having settled the law just as far as it went, but no farther, I am for adhering to it; and if just another sueh ease were presented, I should adopt the maxim stare decisis for my rule, and should decide it in the same way. But it would be a matter of curious speculation at least to consider what would have been the decision in Neil v. Neil, if in addition to the facts which' did appear in the case, it had also been proved, that immediately after the witnesses had subscribed their names to the will the testator had been turned over in his bed so as to bring the witnesses and the will in his immediate *85 view, or the witnesses had gone around his bed to the other side, and there, in his immediate sight and hearing, and within reach of his arm, had owned signatures as witnesses saying to him, so as to be heard and understood, “Mr. Neil, here is your will witnessed,” at the same time pointing with the finger to the names of the witnesses, and holding the will open before him with those names on the same page, and close to his own, and that he then took the paper into his own hands, examined it, closed the leaves, perhaps folded the sheet crosswise, made an enquiry as to his power over it, if he should confide it to a third person for safe keeping; and after receiving an answer that was satisfactory, remarked that it was his will and he wished it to stand, but on getting well he might wish to make some alteration in it, and then handed it to a friend for safe keepings the testator being all the time in the possession of his faculties, and in his right mind and perfect senses. Can there be any reasonable doubt, if such had been the case made by the evidence, what the decision would then have been ? Would not" the court, without difficulty, have affirmed the validity of the will ?
Whilst the counsel for the appellee claim upon the one hand that the authority of the several cases cited by them is directly opposed to the validity of the attestation in this case, they also upon the other, affirm that no case can be produced in which such an attestation has been held good. Almost the precise question here arose in the case of Risley v. Temple, Skinner 106, only about six years after the statute of 29 Charles 2d was passed; but it appears that no opinion was given on the point. The question was also alluded to in the case of Boldry v. Parris, 2 Cush. R. 433, but it did not properly arise in the case, and was not decided by the court. I have already referred to several cases, and especially that of Rosser v. Franklin, 6 Gratt. *86 1, as settling principles which, as I think, tend very strongly to support the attestation in this case. But is yet another case decided by this court, with wplxC21 a decision adverse to the validity of the attestation under consideration would be, as I think, utterly irreconcilable. I refer to the case of Pollock v. Glassell, 2 Gratt. 439. That was the case of the execution of a testamentary paper by a married woman, by virtue of a power. It appeared that the testatrix had verbally stated to a lady friend, Miss S. S. Ashton, her wishes as to the disposition of her property after her death; and the lady, lest she should forget them, of her own accord, wrote the paper in question, (Codicil F,) “ as a memorandum.” At the foot of the paper she wrote the words “ Written by S. S. Ashton for,” intending to add the name of the testatrix, if the latter should be unable to sign her own name. When she mentioned the matter to the testatrix, the latter wrote her name to the paper herself, and when she was about to do so, Miss Ashton struck out with a pen the word “for,” which followed her own name, and was intended to precede that of the testatrix, if it had been written by Miss Ashton. The testatrix requested another lady, Miss Ann R. Ashton, to witness the paper, which she did; and she then requested Miss S. S. Ashton to witness it; but she thought and so told the testatrix, that it was not necessary for her to sign the paper again, as her name was already then to it in the manner before stated; and she did not again subscribe it. Now here the name of the witness, Miss S. S. Ashton, was subscribed before the testatrix signed the paper herself; yet by reason of her recognition of her signature as that of a witness to the testatrix after the paper had been signed by the testatrix, the attestation was held good, and the validity of the paper sustained by the court.
It is said, however, that probably when Miss S. S. *87 Ashton wrote the paper and the words “ written by S. S. Ashton for,” she did so in the presence of the testatrix; and although the paper was then by the testatrix, yet when signed and the signature the witness adopted, it might be properly said to have been subscribed by the witness in the presence of the testatrix. But there is nothing in the case to show that Miss Ashton wrote the paper or the words “ written by S. S. Ashton for” in the presence of the testatrix ; and from the terms and manner of expression of the instrument, and the circumstances under which it was written by Miss Ashton, of her own accord, without being requested by the testatrix, I rather infer the contrary. But if the fact were so, how would it strengthen the case? For whether written in the presence of the testatrix or not, the words and name of Miss Ashton were not written by her as a witness, for the purpose of attestation, but diverso intuitu for the purpose of denoting her agency in signing the name of the testatrix, if she should be unable to authenticate the paper by her own signature. There could be none of the virtue or qualities of an attestation of a will by a signing of the name to the paper for a totally different purpose, and at a time when the testatrix was utterly unconscious of any such act of attestation, and had not yet herself executed the paper.
It is also said that the question was not raised in the case of Pollock v. Glassell, either by the counsel or the court, but passed sub silentio, and that the objection to the codicil in question was placed on a totally different ground. The judges who sat in the case differed in regard to some of the other codicils, but they were unanimous in their opinion as to the validity of this: and it is not likely that if it could have been thought there was anything in the objection, it would have escaped their notice as well as that of the distinguished counsel who argued the cause.
*88 It has also been suggested by the counsel that Judge Baldwin himself could not have regarded this case as authority upon this question, else he would have jn support of his views in the case of Moore v. Moore, 8 Gratt. 307. But it will be remarked that his opinion in this case is very short, and not a single authority is cited throughout. The explanation of this is given in what fell from Judge Moncure, (who also sat in the case of Moore v. Moore,) during the argument of this cause. He stated that the opinion of Judge Baldwin was hastily prepared by him, .without citing any authorities, for the purpose of stating briefly his view of the case, and was not intended by him for publication in that form: That he accordingly withdrew it, intending to write it over at length, with care and deliberation, during the leisure of the vacation, a purpose which was frustrated by his subsequent illness and lamented death; but that had he done so, he (Judge Moncure) has no doubt he would have cited the case of Pollock v. Glassell, as he knows he did in fact rely upon it as an authority in support of his views.
The case of Moore v. Moore, 8 Gratt. 307, perhaps cannot be considered as an authority either way upon this question, as the four judges who sat in it were equally divided in opinion, though the will was sustained, such having been the decree of the court below. But it will be observed that there was no sufficient acknowledgment or recognition of their signatures by the witnesses after subscribing, found by the jury; and the character of the verdict which was a special one, forbade, as was said by Judge Daniel, any inferences or implications that might serve to raise the question.
But it is contended that even if a subsequent recognition of their signatures by the witnesses would be sufficient, there is no such recognition shown in this case, as only one of the witnesses, Crawford, acknowledged his, and that he could not acknowledge the *89 signature of the other witness, Dr. Rives. But it must be remembered that the court is not passing upon a special verdict. The case is one of probat, and court may draw from the evidence every inference and conclusion that could be drawn from it by a jury. Smith v. Jones, 6 Rand. 33; Boyd v. Cook, 3 Leigh 32; Dudleys v. Dudleys, Ibid. 436. There can be little doubt in this case that a jury would without any hesitation have inferred from the evidence a perfect recognition of his signature on the part of Dr. Rives, as well as a similar recognition of his on the part of Dr. Crawford. I think there is nothing in this objection.
Upon the whole, I think there has been a reasonable and substantial, if not a literal, compliance with the requirements of the statute shown in this case, sufficient for all practical purposes, and which in favor of the testamentary right ought to be sustained. To reject the will in such a case would be, as I think, to sacrifice substance to form, and the ends of justice to the means by which they are to be accomplished. But to avoid being misunderstood, I desire to say that in holding a subsequent recognition of his signature by a witness equivalent in legal meaning and effect to his actual signing, I contemplate a recognition under the facts disclosed in this case, and where it is immediately connected in point of time and circumstances with the whole body of the res gesta. The remarks I havé made on this point I do not intend to be understood as applying to the case of such a recognition at a subsequent period wholly unconnected with the occasion of the execution of the will by the testator and the subscribing of their names by the witnesses. It will be quite time enough to express an opinion on the question in such a case when it shall be presented for adjudication.
*90 I am of opinion to reverse the sentence of the Circuit court.
Daniel, J.
It appears that the manual act of subscribing their names to the will by the witnesses took place in a room different from that in which the testator was, and under such circumstances as to render it impossible that the testator could see the witnesses or the will at any moment of the transaction; and it also appears that the testator was so enfeebled by age and sickness as to render it extremely improbable that he had the physical ability to rise from his bed and place himself in a position to see the witnesses or what was going on: And the effort here to uphold the attestation is based on the facts which occurred after the witnesses returned into the testator’s room; which are, that the witness Crawford, after the will had been subscribed by himself and the other witness Rives, carried it back to the testator, and in the presence of Rives, said to the testator, “Mr. Sturdivant, here is your will witnessed,” at the same time pointing his finger to the names of the witnesses, and holding the will open before the testator, the names of the witnesses being on the same page, close to his. He took the paper into his hands, and looked at it as if he was examining it, still holding it in the same position. The witnesses supposed he saw the names, as the paper was near enough to him for him to see it. The testator then closed the leaves, and as was thought by the witnesses, folded the leaves crosswise. Crawford then told him that as he was ill, he had better give the will to some one to keep for him. He asked whether, if he got well, he could take the will back again from the person to whom he gave it; and on being informed that he could, and that he could then burn it if it was not his will, he said that it was his will and he wished it to stand, but that he might thereafter, on getting well, *91 wish to make some alterations in it. The testator then handed the will to Col. Philips, who was present, and who is named in the will as executor. The ness Crawford also stated that the testator was probably about 70 years old; and that he used his spectacles when he signed the will. He did not know whether the testator had his spectacles on when the will was brought back to him after it was witnessed, though he was inclined to think he had not.
The two witnesses (Crawford and Eives) both concur in stating that they were absent from the testator’s room for the purpose of subscribing the will not more than a minute or two; and Crawford states that at first the witnesses were about to witness the will in the testator’s room, but that they found it inconvenient; though he does not say why.
Conceding that these facts imply an acknowledgment by Eives as well as Crawford, of their signatures as witnesses, after their return into the room of the testator, (as a majority of the court seem to entertain no serious doubt on that score,) it becomes necessary to examine the question mainly discussed at the bar, viz: Whether in a case where the witnesses, for convenience, leave the room of the testator, and go out of his view into another room, to subscribe their names as witnesses to the will, and after subscribing their names, again return forthwith into the testator’s room and immediate presence, and there acknowledge their signatures as witnesses, to the testator, and he approves the act, such acknowledgment brings the attestation within the true meaning of the requirement of the law, that the will be attested by the witnesses subscribing their names in the presence of the testator.
It is conceded that the precise question has never been fully presented and adjudicated in any of the English decisions on the statute of 29 Charles 2, from *92 which ours is taken. The earliest case (and indeed onV one) which I have been able to find in the reporters, in which the facts were such as to presen£ question, is very imperfectly reported. It jg the case of Risley v. Temple, reported in Skinner 107, as tried in the 35th year of Charles 2, just six years after the passage of the act. Roberts, in his Treatise on Wills, 1st vol. 130, in speaking of such an acknowledgment and of the case just mentioned, says: “It seems not to have been judicially decided, whether an acknowledgment by a subscribing witness to the testator of his handwriting to the attestation would be sufficient. In the case of Risley v. Temple, the facts were, that the testator, lying sick in bed, made his will, and signed, sealed and published it in the presence of three witnesses; hut being tired, ordered them to go and subscribe it in another room. They went into another room, out of the presence and sight of the testator, and subscribed their names, and then returned and owned their names to the testator, who looked upon the will and said ‘ they have done well.’ But this point was not spoken to in the case, according to the report. It is very plain, however, (he proceeds,) that to hold such an acknowledgment sufficient would he in direct opposition to the words of the statute, which, though it does not by the 5th section require the signature of the testator himself to he in the presence of the witnesses, does yet expressly direct the subscription of the witnesses to be in the testator’s presence. And it seems little to he doubted hut that, agreeably to the greater regard for the words of the statute which now seems to prevail in our courts of justice, such an acknowledgment, by a subscribing witness, of his handwriting to the attestation, made to the testator, after making the subscription out of his sight and presence, would he deenled an insufficient compliance with the statute.”
*93 In 8 Viner’s Abr. 123, title Devise No. 7, tbe same Statement of the case is given without comment, and without any further remarks on the subject; and in 10 Bacon’s Abr. 497, library edition, the question is simply stated, with a reference to the passage from Roberts above quoted. I have examined the report of the case in Skinner, and find that it is correctly given by Roberts, and think it not improbable that the case must have gone off on some other question, as I can find no further history of it in any of the reporters.
Though the question has not been decided in any English case, as arising under the act of 29 Charles 2, we have an express adjudication by the ecclesiastical court upon a question of like character, arising on that portion of the 9th section of the 24th ch. 1 Victoria, declaring that the signature of the testator shall be made or acknowledged by him in the presence of two or more witnesses present at the same time, and such witnesses shall attest and shall subscribe the will in the presence of the testator.
In the case of Moore v. King, 7 Ecc. R. 429, the testator wrote a codicil to his will in the presence of his sister, and she at his request subscribed her name thereto in his presence. On the same day the medical attendant of the testator being present, the testator showed the will to him and said, “ This is a codicil to my will, signed by myself and by my sister, as you will see at the bottom of the paper; you will oblige me if you will add your signature, two witnesses being necessary.” The second witness then subscribed his name to the will. The first witness, standing by his side at the time, said, pointing to her name signed at the bottom of the paper, “ There is my signature you see; you had better place yours underneath.” The case seems to have been fully argued, and it was insisted by the counsel, in support of the allegation, that as the common law recognized three modes of *94 signing papers, viz: actual signature, signature by mai'k> an(l acknowledgment of a signature, there was reason why the acknowledgment of a witness, to a will, of his signature should not be held to be a subscription of his name within the meaning of the statute. The court, however, held that'though the first witness had subscribed her name in the presence of the testator, in the absence of the second witness, the subsequent acknowledgment of her signature in the presence of the testator and the second witness, cotemporaneous with the subscription of his name by the second witness, did not amount to a subscribing by two witnesses at the same time in the presence of the testator. That whilst the act permitted an acknowledgment of his signature by the testator, it gave no authority to the witnesses to acknowledge their subscriptions. In our own court we have had no adjudication of the question, unless the case of Pollock v. Glassell, (to which I shall presently refer,) can be so regarded; and the research of counsel and of the court has failed of finding but few cases in the courts of our sister states, in which the question has been made the subject of judicial examination.
The case of Boldry v. Parris, 2 Cush. R. 433, cited at the bar, cannot be regarded as authority either way; inasmuch as the court say that no such acknowledgment was shown by the facts as to make it .necessary to decide, whether or not, if the witnesses had acknowledged their signatures, (which had been made in another room,) in the presence of the testatrix, that would have been a sufficient subscribing in her presence.”
In the case of Graham v. Graham, 10 Ired. R. 219, the question was, 1 think, as distinctly raised by the facts as it is in the one before us. There the will was subscribed by the witnesses in another room, so situated as that their backs would have been seen by the testator, by turning his head and looking around the *95 side of the door, though he could not see then faces or hands or the will, the view of which was obstructed by the partition. After the signing by the witnesses, they returned with the will into the room where the testator was, and informed him they had witnessed it, and he requested a person to take charge of it. Though it is not stated that the testator looked at the signatures, or made any remarks about what the witnesses had done, yet the direction to his friend to take charge of the will was a plain manifestation of his approval of the manner in which the witnesses had attested; and though the witnesses did not point to their signatures, as Crawford did here, yet their returning with the will, and informing the testator that they had witnessed it, was as plain an acknowledgment of their signatures as that inferred here in respect to Rives, who said nothing, and whose acknowledgment can only be implied from his not dissenting from the statement made by Crawford in his presence. If there be any case in which such an acknowledgment could be received by a court as a virtual compliance with the requirements of the act, the court, in the case of Graham v. Graham, might well have felt justified in departing from the letter of the law, and receiving the acknowledgment by the witnesses as a substitute for the actual subscribing in the presence of the testator. Yet neither in the instruction of the circuit judge to the jury, nor in the opinion of the chief justice in the appellate court, is the slightest allusion made to what occurred after the witnesses returned into the presence of the testator; notwithstanding the latter conceded that it was only by a rigid adherence to the requirements of the statute and the decisions upon it, that the subscribing by the witnesses in that case could be held as being out of the presence of the testator.
It is argued, that the decision of this court, in the case of Pollock v. Glassell, 2 Gratt. 439, in respect to *96 one papers established as a codicil to the will of testatrix in that case, involved the decision of the now in controversy here. There, as it appears from statement of the case, the testatrix, whilst she wag HI, having expressed to her friend, Miss S. S. Ashton, her wishes as to the disposition of her property after her death, Miss Ashton, of her own accord, and lest she should forget them, made a written memorandum, and at the foot of it wrote the words “ Written by S. S. Ashton for,” intending to add the name of Mrs. Grlassell if the latter should be unable to authenticate the paper by her own signature. When Miss Ashton mentioned it to Mrs. Grlassell, the latter did write her name to it herself; and therefore, when she was about to sign it, Miss A. struck out with a pen the word “ for,” which at first followed her own name, and was intended to precede that of Mrs. Grlassell, if it had been written by Miss A. Mrs. Glassell requested Miss A. R. Ashton to witness the paper, which she did; and then Mrs. Gr. requested Miss S. S. Ashton to witness it, who thought and so told Mrs. Gr. that it was not necessary for her to sign the paper again, as her name was already then to it in the manner before stated, and therefore Miss S. S. Ashton did not subscribe the paper again. Mrs. Gr. said there ought to be two witnesses and a scroll, whereupon Miss S. S. Ashton annexed the scroll to Mrs. Grlassell’s signature. One of the questions in the case was, whether this paper was duly executed as a codicil to the will of Mrs. Grlassell; the will and the codicil being both intended as in pursuance of a power vested in Mrs. Gr. by a deed of marriage settlement declaring that in case “she should make a will, the property, from and after her death, should be to the use of such person as should become entitled thereto by the gift or devise of the said Margaret C. (Mrs. Grlassell,) under her hand and seal, attested by two or more witnesses.” The marriage settlement *97 also contained a covenant on the part of her husband. John Glassell, that “she might dispose of certain property by deed or will or writing purporting to be deed or will, notwithstanding the coverture.” It was urged against the codicil, that the signature of Miss S. S. Ashton’s name could not, under the circumstances, be treated as an attestation, or at least that it must be considered as a special attestation, confined to the fact that the paper was written by her. The court, however, held differently; and though there was division with respect to other questions in the case, the court were unanimous in holding that the paper in question was a valid codicil.
It will be seen from the statement of facts, that it does not show whether Miss S. S. Ashton wrote the paper and signed it in the presence of Mrs. Glassell, or elsewhere. Mor is anything said as to whether or not the other witness signed her name in the presence of Mrs. Glassell. A reference to the argument of counsel, to the line of authority cited and to the opinion of the court, will show that the question as to whether the name of Miss Ashton had at first been written in the presence of the testatrix, was one not spoken to, and not in the mind either of the counsel or of the court. It will be seen also that the question whether the codicil was subscribed by the witnesses in the presence of the testatrix, was one not necessarily arising in the case, as the settlement merely required that “ the gift or devise should be under the hand and seal of Mrs. G. and attested by two witnesses.”
I do not regard the case as any authority upon the question which we are now considering; and it is not a little remarkable that Judge Baldwin, who sat in the case and who delivered the opinion which was mainly adopted by the court, should have made no reference to it in the case of Moore v. Moore, if indeed he regarded it as authority for the proposition now sought *98 to be established by it. In the case last mentioned, re^edi as we see from his opinion, 8 Gratt. 327, on fact that the will, after being signed by the witneggeg) wag bro-ught by them to the testator, and ingpected and identified by him, and their attestation fully approved, as a strong and controlling feature not to he found in any other he had seen.” And though this was a proposition about which there was a division of sentiment in the court, he cited no authority in support of it.*
Nor do I think that any aid in support of the will here can be drawn from the cases of Swift v. Wiley, 1 B. Monr. R. 114, and Rosser v. Franklin, 6 Gratt. 1. In each of these cases the witnesses did subscribe their names in the presence of the testator. In the first mentioned case, two of the witnesses subscribed their names in the presence of the testator and at his request, but before he had signed the will. Some hours afterwards the testator signed the will in the presence of the two first witnesses and of a third, who then subscribed his name likewise in the presence of the testator and of the two first witnesses, the latter still remaining with the testator, and again acknowledging their respective signatures as subscribing witnesses. The court said that all the statute required was, that the will should be signed by the testator; attested by two competent witnesses; and subscribed also by the *99 witnesses in testator’s presence. That neither the letter or spirit of the statute prescribed more; and that all these things had been indisputably proved the case; and that if necessary, the subscription the names of the three witnesses and that of the testator, might be considered as a continuous series of acts indivisible as to time: That it would have been superfluous for the two first witnesses to have subscribed their names; became they had once subscribed their names to the paper in the presence and at the request of the testator, which fact was recognized by him, as well as by themselves after his own name had been subscribed, and where the document thus recognized and identified was finally and conclusively published as his will. And in the case of Rosser v. Franklin two of the subscribing witnesses, Neighbours and Cralle, were dead; and from the testimony it appeared that Neighbours had written the name of the testatrix to the will at her request, and that he and Cralle had witnessed it by like request and in her presence. The third witness Driskell was examined, and stated that he witnessed the will by the request of the testatrix and in her presence, and also in the presence of Neighbours and Cralle, who had previously witnessed it, but that he made his mark to his name, which had been written for him before the testatrix made hers ; and that after he had made his mark, he handed the pen to her, and she turned to Neighbours and said, “ As you have written my name, I will make my mark; and that she then made her mark to her name, which had been written by Neighbours. The court said, that inasmuch as in the absence of proof to the contrary, it ought to be presumed that the attestation by the two deceased witnesses was regular, and as the witness Driskell seemed to have but an indistinct memory of the order in which the signing and attestation took place; and the paper had been admitted to *100 probat by the court below, which had the best opportrinity of knowing the weight to be attached to the of Driskell, it would be inferred, if neces-gg^ that the testatrix made her mark before the subscription of the witnesses. Judge Baldwin, who delivered the opinion, concludes by saying that “ The fact, whether, in the order of time, the testatrix made her mark before or after the subscription of the witnesses, was, under the circumstances, in nowise material, in so much as the whole transaction must be regarded as one continuous, uninterrupted act, conducted and completed within a few minutes, while all concerned in it continued present, and during the unbroken supervising attesting attention of the subscribing witnesses.”
These two cases, instead of furnishing authority to show that the subscribing by the witnesses, in the presence of the testator, may be dispensed with, or substituted by an after acknowledgment by them, are founded, each, on a course of reasoning manifesting the controlling weight and influence attached by the courts to that important requirement of the act. And indeed it is difficult to conceive how any such decision sanctioning a change as to the order of time in which the signing by the testator and the subscribing by the witnesses usually and naturally occur, can be pleaded as a warrant for wholly dispensing with another essential element of the attestation, which from its very nature must remain unaltered, no matter what may be, in legal intendment, the order in point of time of the events just named.
To make the cases of Swift v. Wiley and Rosser v. Franklin bear in favor of the will here, one of the most important features in each case would have to be changed. If the witnesses in those cases had been out of the presence of the testators instead of in their presence, when the manual act of subscribing by the witnesses took place, and the wills had been still sus *101 tained, then such decisions would have been strong if not controlling authority in the case in hand. Make this change, and these cases then become in features to that of Ragland v. Huntingdon, 1 Ired. R. 561. There, one of the subscribing witnesses prepared the will by the request of the testator, and subscribed his own name to it as a witness out of the lpresence of the testator, and then read the will to the testator and told him, he had signed as a witness; and the testator approved what was done, and signed the will; and the other witness then signed in the presence of the testator. But in that case the decision was the other way, the court holding that there had not been a signing by loth witnesses in the presence of the testator, as required by the statute : And the reasoning of the judges, in Swift v. Wiley and Rosser v. Franklin, justify us in supposing it not improbable, that the wills in each of those cases would have met with similar fate if the witnesses had subscribed their names out of the presence of the testators.
Nor do I think that the cases deciding that the acknowledgment by the testator of his signature to the will, is sufficient proof of signing within the meaning of the act, justify us in saying that an acknowledgment by the witnesses of their signatures is equivalent to the subscribing of their names in the presence of the testator. Though the first proposition is now well settled, it was not established without much dissent expressed on the part of some of the most learned of the English judges.
In the case of Ellis v. Smith, 1 Ves. R. 11, all of the judges who sat in the case, Lord Hardwicke, Parker, chief baron, Willis, chief justice, and Sir John Strange, master of the rolls, delivered separate opinions; and they each declared, that if the question had been, res integra, they should have doubted whether such an acknowledgment by the testator of his signature was a proper execution within the meaning of the statute.
*102 And in the case of Stonehouse v. Evelyn, 3 P. Wms. 252, in which the court held that such acknowledgby the testator was sufficient without assigning any. reagon for opinion, the reporter, after stating the decision, proceeds to say that such decision was in accordance with the practice; and that it was remarkable that the statute did not say that the testator shall sign in the presence of the witnesses, but requires these three things: First, that the will should be in writing; 2dly, that it should be signed by the testator; and 3dly, that it should be subscribed by the witnesses in the presence of the testator. . Thus as I infer, justifying the action of the court in that case, on the ground that the words of the statute required the will to be subscribed by the witnesses in the presence of the testator, and did not require him to sign in presence of the witnesses.
Judges might well consent to yield to the precedents setting up the acknowledgment of the testator in place of his signing before the witnesses, seeing this marked difference in the words applicable to the signing by the testator and the subscribing by the witnesses; and trusting to the security that would be left in the clause requiring that the will should be subscribed by the witnesses in the presence of the testator. These precedents have in fact, to no inconsiderable extent, found their justification with the profession in the very distinction which they are now invoked as authority for obliterating and destroying. And instead of their furnishing reasons why we should dispense with the remaining safeguards provided by the act, the very fact that the decisions have now settled the law too firmly to be altered, with respect to the acknowledgment of his signature by the testator, is of itself a strong appeal to the court to see in all cases that the will has been in fact subscribed by the witnesses in the presence of the testator.
To dispense with that requirement now, is to strike *103 down the remaining shield provided by the statute, and to leave the ignorant and infirm with little or nothing of that protection which the ceremonies required the act were designed to place around their most important acts. But it cannot I presume be contended that we ought, in taking the acknowledgment of the witnesses to the testator, of having subscribed their names, in place of proof that they did subscribe in his presence, to go farther than the courts have gone in taking the testator’s acknowledgment of his signature before the witnesses, in place of positive proof, by the witnesses, of his signing: If indeed any decision with respect to the legal eifect of the acknowledgment by the testator of his will, the thing to be proved, can by analogy be made to apply at all to the acknowledgments by the witnesses who are to prove it. To what extent, then, has this court gone in substituting such acknowledgments by the testator for direct proof by the attesting witnesses, of his execution of the will. Judge Roane, in the case of Burwell v. Corbin, 1 Rand. 156, does indeed say that “ an acknowledgment of a signature is only a signing in another form. In principle, it is in truth a signing.” But in neither of the cases of Smith v. Jones, 6 Rand. 33, Dudleys v. Dudleys, 3 Leigh 436, or Clarke v. Dunnavant, 10 Leigh 13, all of which were cases in which the testator’s name had been signed to the will by another person, do I understand the court as holding that the acknowledgment by the testator of the signature or of the will amounted to more than proof from which the inference followed that the will had been signed for him by his request and in his presence. Rone of these cases go to the extent of declaring that an acknowledgment which negatives a signing for him in his presence, shall be taken as conclusive proof that the will was in fact or in legal effect signed by another for him in his presence.
Let us suppose a case, then, where, there being a *104 signature to the will, the testator acknowledges it before the attesting witnesses, who, upon their examidepose to such acknowledgment, but also state jn facf -¿pg -¡¡eg^tox-’g name was signed to the will ]jy one 0f them not in the presence of the testator. Are we bound to infer a compliance with the statute against the positive proof to the contrary ? The question was decided in the negative in the case of Dunlop v. Dunlop, 10 Watts’ R. 153. It is true that the Pennsylvania act requires that the will shall be signed by the testator, or by some person for him in his presence and with his express direction; whilst ours says that it must be signed by him, or by some other person in his presence and by his direction. I cannot perceive any such difference in the terms employed in the two acts, “with his express direction,” “and by his direction,” as to call for a different decision in a case arising under our act of 1823. And whilst the strong and pointed language of the act, “express direction,” was used by the judge as a persuasive argument, the general principles announced plainly cover a case arising under our act.
If I am correct in supposing that the decisions of our court do not go to the extent of holding the acknowledgment of the will by the testator, when his name has been signed by another, as proof of execution, which may not be contradicted by the true facts of the case, the analogy which is sought to be drawn from those decisions, in aid of the attestation here, necessarily falls to the ground: For whilst the witnesses here make a statement from which we imply their acknowledgment to the testator of their subscription, they at the same time expressly prove that they did in fact subscribe their names out of the testator’s presence. Nor is any progress made, in the argument on the other side,by showing that an attesting witness may be a marksman, and that he may attest by procuring another to *105 write his name for him; and by saying, that as he may adopt his name written for him by another, a fortiori, he may adopt it when written by himself; the answer being, that whether the witness gets another to write his name for him Or writes it himself, the act must still in each case be done in the presence of the testator.
I think that the sentence of the Circuit court ought to be affirmed; but a majority of the court being of a different opinion, it must be reversed.
Allen, J. concurred with Daniel, J.
Moncure and Samuels, Js. concurred in the opinion of Lee, J.
Judgment reversed.

 Note by the Judge.—My impression with regard to Judge Baldwin’s opinion in Moore v. Moore, is somewhat different from the facts which Judge Lee supposes to have occurred in reference to its preparation. The opinion, according to my recollection, was submitted in conference, as containing fully his view's of the case. After seeing the -written opinions of the other judges, he said that though his views of the case remained unaltered, he would add to his opinion some comments on the authorities cited, and would also refer to authority in support of his own positions. I have no recollection, however, that in any comparison of opinions, any reference was made either by himself, or any other members of the court, to the case of Pollock v. Glassell, as authority in the case of Moore v. Moore.